RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
MARK POE (S.B. #223714)
  mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs Hui Cai, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HUI CAI, JIE CAO, LIMING CHEN, LINGPING CHEN, XIAOBING CHEN, YUHONG DUAN, LIN FAN, SHAOJIANG GAI, XUBIN GAO, YUNFEI GAO, JUNHANG GUAN, YE GUO, BEI JIANG, ZUQIANG JIN, KAI LAN, FAMING LI, FANG LI, LING LI, LINGAO LI, RUPING LI, NA LI, ZILONG LI, YANMIN LIAO, GANG LIU, HAIPENG LIU, PENGJIAN LIU, QIAN LIU, XIAOHU LUO, LEI MA, YUANQING MIAO, JIEXIN NIU, HEMANGKUMAR PATEL, BINGCHEN SHANGGUAN, HUANXIN SHE, YI SHEN, YUPING SHEN, TAO SHEN, DONGGANG WANG, SHUYU WANG, YU WANG, HONG WU, XUE DONG WU, HONGXIONG XU, YUN XUE, MEIXIA YANG, WEN YANG, LING YE, WEI YE, LILI ZHANG, SHAOHUI ZHANG, XINYANG ZHANG, LI MEI ZHAO, QI ZHOU, QIXUAN ZHOU, WEN ZHOU, BIN ZHU, BIYING ZHU

Plaintiffs,

Case No. 2:22-cv-02025

**CLASS ACTION COMPLAINT**

v.

CMB EXPORT LLC

Defendant.

Plaintiffs Hui Cai, Jie Cao, Liming Chen, Lingping Chen, Xiaobing Chen, Yuhong Duan, Lin Fan, Shaojiang Gai, Xubin Gao, Yunfei Gao, Junhang Guan, Ye Guo, Bei Jiang, Zuqiang Jin, Kai Lan, Faming Li, Fang Li, Ling Li, Lingao Li, Ruping Li, Na Li, Zilong Li, Yanmin Liao, Gang Liu, Haipeng Liu, Pengjian Liu, Qian Liu, Xiaohu Luo, Lei Ma, Yuanqing Miao, Jiexin Niu, Hemangkumar Patel, Bingchen Shangguan, Huanxin She, Yi Shen, Yuping Shen, Tao Shen, Donggang Wang, Shuyu Wang, Yu Wang, Hong Wu, Xue Dong Wu, Hongxiong Xu, Yun Xue, Meixia Yang, Wen Yang, Ling Ye, Wei Ye, Lili Zhang, Shaohui Zhang, Xinyang Zhang, Li Mei Zhao, Qi Zhou, Qixuan Zhou, Wen Zhou, Bin Zhu, Biying Zhu (collectively, "Plaintiffs") allege as follows:

## JURISDICTIONAL STATEMENT

1.      The Court has diversity jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, and many members of the class are citizens of states different than that of Defendants.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## INTRODUCTION

3.      Under the federal government's "EB-5" visa program, foreign nationals may obtain permanent legal residency (otherwise known as a "green

card") in the United States by investing $500,000 in financing business ventures that create employment for at least ten American workers.

4.    Plaintiffs were all participants in that program, through a California limited partnership called CMB Infrastructure Investment Group VII, L.P. (hereafter "Group 7"). Group 7 was created and structured by defendant CMB Exports LLC (hereafter "CMB"). CMB is a single member LLC owned and managed by a man named Patrick F. Hogan. Under the structure of the Group 7 partnership, CMB was to serve as the general partner, while Plaintiffs and the other EB-5 investors were each limited partners, who each owned one unit of the Group 7 partnership.

5.    In or about November 2011, CMB arranged for the Group 7 partnership to make a $90 million loan investment to fund the Ivanpah solar generating facility, which was then under construction on the California side of the state line near Primm, Nevada.

6.    Beginning in 2014, the borrower BrightSource Ivanpah Funding LLC ("BSIF") and the guarantor of the Group 7 note (BrightSource Energy, Inc. ("BSE")), began facing difficulty in making the principal and interest payments that were coming due on the Group 7 note. In its capacity as the general partner of Group 7, CMB thereafter entered a series of loan modifications to defer payments coming due and agreed to forbear from declaring BSIF and BSE in default on the Group 7 note.

7.    In conjunction with those modifications and forbearances, CMB took advantage of its role as the general partner of Group 7, to the detriment of all of the limited partners, including Plaintiffs. It did so by modifying the loan terms so that ever greater proportions would be payable as interest to Group 7, rather than as recoupment of principal. Due to the terms of the partnership agreement CMB had engineered, the vast majority of interest paid on the Group 7 loan went to CMB as the general partner.

8.      CMB further took advantage of its role as Group 7's general partner by arranging sweetheart bridge loans between entities affiliated with Patrick F. Hogan (who, again, was the sole member and manager of CMB) and BSE, whereby the entities affiliated with Mr. Hogan would receive extreme rates of interest on the short-term loans they made to BSE, while the Group 7 partnership and its limited partners would receive nothing but forbearances on repayment of principal.  These short-term bridge loans to the exclusive benefit of Hogan-affiliated entities (including the "Hogan Family Trust") continued through at least 2018, despite the fact that as early as December 2016, CMB had concluded that it was unlikely that the limited partners would ever see repayment of the $500,000 in principal that they had each invested in the Group 7 partnership (without disclosing that assessment to the Group 7 partnership, of course).

9.      In other words, CMB breached its fiduciary duty to Plaintiffs and the other limited partners by profiting from a series of loan modifications and highly favorable bridge loans over the same period in which it recognized that the likelihood of the limited partners ever recovering their investment dwindled to zero. Meanwhile, the fact that CMB had recognized that the limited partners were unlikely to ever recover any of the principal of their investment was not disclosed to Plaintiffs and the other limited partners until they received an auditor's report of the Group 7 investment in approximately December 2018.

10.      Accordingly, Plaintiffs bring this action to recover the damages they suffered from CMB's self-dealing actions and mismanagement of the Group 7 partnership, restitution of the unjust enrichment CMB realized at Plaintiffs' expense, and for the removal and/or replacement of CMB as the general partner of Group 7 going forward.

## PARTIES

11.      Plaintiff Hui Cai is a resident of China and a limited partner in the Group 7 partnership.

12. Plaintiff Jie Cao is a resident of New York and a limited partner in the Group 7 partnership.

13. Plaintiff Liming Chen is a resident of Alameda County in California and a limited partner in the Group 7 partnership.

14. Plaintiff Lingping Chen is a resident of New York and a limited partner in the Group 7 partnership.

15. Plaintiff Xiaobing Chen is a resident of China and a limited partner in the Group 7 partnership.

16. Plaintiff Yuhong Duan is a resident of China and a limited partner in the Group 7 partnership.

17. Plaintiff Lin Fan is a resident of Alameda County in California and a limited partner in the Group 7 partnership.

18. Plaintiff Shaojiang Gai is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

19. Plaintiff Xubin Gao is a resident of China and a limited partner in the Group 7 partnership.

20. Plaintiff Yunfei Gao is a resident of Michigan and a limited partner in the Group 7 partnership.

21. Plaintiff Junhang Guan is a resident of Contra Costa County in California and a limited partner in the Group 7 partnership.

22. Plaintiff Ye Guo is a resident of Alameda County in California and a limited partner in the Group 7 partnership.

23. Plaintiff Bei Jiang is a resident of China and a limited partner in the Group 7 partnership.

24. Plaintiff Zuqiang Jin is a resident of Massachusetts and a limited partner in the Group 7 partnership.

25. Plaintiff Kai Lan is a resident of Washington and a limited partner in the Group 7 partnership.

26.     Plaintiff Faming Li is a resident of China and a limited partner in the Group 7 partnership.

27.     Plaintiff Fang Li is a resident of China and a limited partner in the Group 7 partnership.

28.     Plaintiff Ling Li is a resident of China and a limited partner in the Group 7 partnership.

29.     Plaintiff Lingao Li is a resident of Oregon and a limited partner in the Group 7 partnership.

30.     Plaintiff Ruping Li is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

31.     Plaintiff Na Li is a resident of Washington and a limited partner in the Group 7 partnership.

32.     Plaintiff Zilong Li is a resident of Orange County in California and a limited partner in the Group 7 partnership.

33.     Plaintiff Yanmin Liao is a resident of Santa Clara County in California and a limited partner in the Group 7 partnership.

34.     Plaintiff Gang Liu is a resident of China and a limited partner in the Group 7 partnership.

35.     Plaintiff Haipeng Liu is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

36.     Plaintiff Pengjian Liu is a resident of Illinois and a limited partner in the Group 7 partnership.

37.     Plaintiff Qian Liu is a resident of Alameda County in California and a limited partner in the Group 7 partnership.

38.     Plaintiff Xiaohu Luo is a resident of Florida and a limited partner in the Group 7 partnership.

39.     Plaintiff Lei Ma is a resident of San Diego County in California and a limited partner in the Group 7 partnership.

40.     Plaintiff Yuanqing Miao is a resident of Illinois and a limited partner in the Group 7 partnership.

41.     Plaintiff Jiexin Niu is a resident of Santa Clara County in California and a limited partner in the Group 7 partnership.

42.     Plaintiff Hemangkumar Patel is a resident of Orange County in California and a limited partner in the Group 7 partnership.

43.     Plaintiff Bingchen Shangguan is a resident of San Bernardino County in California and a limited partner in the Group 7 partnership.

44.     Plaintiff Huanxin She is a resident of China and a limited partner in the Group 7 partnership.

45.     Plaintiff Yi Shen is a resident of China and a limited partner in the Group 7 partnership.

46.     Plaintiff Yuping Shen is a resident of New York and a limited partner in the Group 7 partnership.

47.     Plaintiff Tao Shen is a resident of Texas and a limited partner in the Group 7 partnership.

48.     Plaintiff Donggang Wang is a resident of San Mateo County in California and a limited partner in the Group 7 partnership.

49.     Plaintiff Shuyu Wang is a resident of Santa Clara County in California and a limited partner in the Group 7 partnership.

50.     Plaintiff Yu Wang is a resident of New York and a limited partner in the Group 7 partnership.

51.     Plaintiff Hong Wu is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

52.     Plaintiff Xue Dong Wu is a resident of New Jersey and a limited partner in the Group 7 partnership.

53.     Plaintiff Hongxiong Xu is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

54.     Plaintiff Yun Xue is a resident of Orange County in California and a limited partner in the Group 7 partnership.

55.     Plaintiff Meixia Yang is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

56.     Plaintiff Wen Yang is a resident of Massachusetts and a limited partner in the Group 7 partnership.

57.     Plaintiff Ling Ye is a resident of Santa Clara County in California and a limited partner in the Group 7 partnership.

58.     Plaintiff Wei Ye is a resident of China and a limited partner in the Group 7 partnership.

59.     Plaintiff Lili Zhang is a resident of New York and a limited partner in the Group 7 partnership.

60.     Plaintiff Shaohui Zhang is a resident of Orange County in California and a limited partner in the Group 7 partnership.

61.     Plaintiff Xinyang Zhang is a resident of Michigan and a limited partner in the Group 7 partnership.

62.     Plaintiff Li Mei Zhao is a resident of New York and a limited partner in the Group 7 partnership.

63.     Plaintiff Qi Zhou is a resident of Virginia and a limited partner in the Group 7 partnership.

64.     Plaintiff Qixuan Zhou is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

65.     Plaintiff Wen Zhou is a resident of San Diego County in California and a limited partner in the Group 7 partnership.

66.     Plaintiff Bin Zhu is a resident of Los Angeles County in California and a limited partner in the Group 7 partnership.

67.     Plaintiff Biying Zhu is a resident of North Carolina and a limited partner in the Group 7 partnership.

68.     Defendant CMB Export LLC is a Texas limited liability company headquartered in Rock Island, Illinois, and the general partner of the Group 7 partnership.

## FACTUAL ALLEGATIONS

### The Creation and Structure of the Group 7 Partnership

69.     Group 7 was formed by CMB from the investments of 180 foreign nationals, who each contributed $500,000 as part of the federal EB-5 visa program. In addition to the $500,000 capital contribution, each limited partner paid CMB a $35,000 or $45,000 "syndication fee," for a total of at least $6.3 million.

70.     Subsequently, CMB and Mr. Hogan reached a settlement agreement with the Securities and Exchange Commission for having sold unregistered securities to EB-5 investors, including Group 7.  As part of the settlement, CMB and Mr. Hogan had to desist from further violations of the federal securities laws and also agreed to pay nearly $12 million in penalties (when aggregating for the penalties assessed to each limited partnership managed by CMB).

71.     CMB did not make any capital contribution to the Group 7 partnership. It was nevertheless entitled to a 20% share of any "profits" that Group 7 might realize, and in addition received a priority on any interest payments that the Group 7 partnership might receive, through a device called the "Annual Interest Income Pass-Through."  Under the Annual Interest Income Pass-Through, CMB was to receive the greater of (1) all but one percentage point of the annual interest received on loans made by the partnership, or (2) an amount of interest equal to 4% of the total capital contributions of all of the limited partners, i.e., $3.6 million.  That is, under the first option, if Group 7 were able to fund a loan at an annual 10% interest rate, CMB was to receive 9% of that, with the limited partners to receive the remaining 1%.  And under the second, CMB was to receive a minimum of $3.6 million in interest payments.

72.     In essence, under the partnership structure that CMB created, it had no incentive to make investments or manage the partnership in a way that was likely to recoup the $500,000 capital outlay of each of the limited partners (since CMB had made no capital contribution).  But CMB had every interest to maximize the interest payments to Group 7, because it would receive the overwhelming majority of such amounts.

73.     CMB further structured the Group 7 partnership such that it would have "full, exclusive and complete discretion, power and authority, to manage, control, administer and operate the business and affairs of the Partnership," "to the maximum extent permitted by Applicable California Law."  In other words, given the misalignment in incentives between CMB and Plaintiffs, and given CMB's complete control over the management and operations of the Group 7 partnership, the opportunities and incentives for self-dealing were manifest.

**The Ivanpah Investment and Continual Loan Restructuring**

74.     In November 2011, Group 7 entered into a loan agreement with BSIF to develop the Ivanpah solar generating facility.  The loan was for $90 million (comprised of the $500,000 contributions from each of the 180 limited partners), and called for 5% quarterly interest payments, with principal payments of $5,000,000 due annually beginning December 31, 2014 through June 6, 2018, when the entire principal balance was to come due.  BSE guaranteed the loan.

75.     The Group 7 loan performed for the first three years, with CMB receiving the lion's share of the interest payments, pursuant to the Annual Interest Income Pass-Through provision.  On September 14, 2014, however (months before the first $5,000,000 principal payment was to become due), CMB agreed with BSIF and BSE to enter a "modification" of the Group 7 loan, under which the final three quarterly interest installments for 2014, as well as the principal payment (plus an additional $1,000,000 principal payment), were to be deferred for just fifteen days, to January 15, 2015.  That deadline came and went, but by February 19, 2015, BSIF

had paid the three quarterly interest payments, plus $400,000 as a "loan modification fee" and for late charges.  Again, the lion's share of those payments went to CMB under the Annual Interest Income Pass-Through provision.  BSIF did not make the $5,000,000 principal payment or the additional $1,000,000 payment, which would have gone to Plaintiffs and the other limited partners, but not to CMB.

76.     Concurrent with the September 14, 2014 loan modification, an entity affiliated with CMB loaned BSE $6,000,000 for "short-term working capital needs."  The precise terms of that loan are unknown to Plaintiffs, but according to an auditor's report on the loan, BSE repaid that loan "plus interest" to the affiliated entity just four months later, on January 15, 2015.

77.     Over the course of 2015, neither BSIF nor BSE made any further interest or principal payments on the loan.  Instead, on April 13, 2016, CMB negotiated a second modification of the Group 7 loan with BSIF and BSE, under which all of the interest payments for 2015 and the first quarter of 2016, along with the $5,000,000 principal payments for 2014 and 2015 (plus the additional $1,000,000 principal payment) were deferred until March 1, 2018.  Nevertheless, under this second modification BSIF or BSE was required to make three annual payments of $2,200,000 to the Group 7 partnership on April 13, 2016, March 31, 2017, and March 1, 2018, all of which comprised interest, not principal.  In other words, CMB again negotiated away the limited partners' rights to begin to recoup their principal, in exchange for interest-only payments, most or all of which would go exclusively to CMB.

78.     Also as part of the April 2016 modification, CMB negotiated with BSIF and BSE to increase the interest rate on the deferred principal and interest amounts from 5% to 11%.  At first blush, that action seems beneficial to Plaintiffs and the other limited partners; they are foregoing timely recovery of their principal, but at least the interest rate was more than doubled in exchange for the delay.  But this too was a form of self-dealing, exclusively for the benefit of CMB but contrary

to the interests of Plaintiffs and the other limited partners.  That is because under the "greater than" formula in the Annual Interest Income Pass-Through provision, CMB would receive 10 percentage points of that increased rate, while Plaintiffs and other the limited partners would continue to receive the same 1 percentage point that they would have received if the interest rate were left at 5%.  Yet in this way, by requiring the borrower to pay an extreme interest rate in exchange for foregoing principal repayment, CMB enriched itself, while simultaneously reducing the likelihood that BSIF or BSE would ever be able to pay a dime against the principal.

79.    In conjunction with this second modification, CMB engaged in a very curious transaction.  On the same date of the modification, an "affiliated entity" of CMB (presumably the "Hogan Family Trust") loaned an unidentified BSE shareholder $2,200,000.  That shareholder then loaned $2,200,000 to BSE, who in turn used it to make the April 13, 2016 annual payment that was due under the second modification (such that it would go right back to CMB).  The purpose of this circular transaction is unclear, but Plaintiffs expect that discovery will show that it was done solely for CMB's benefit, and to Plaintiffs' and the other limited partners' detriment.

80.    A further episode of self-dealing occurred in September 2017, when the Hogan Family Trust lent an additional $6,000,000 in one note, and $1,500,000 in another note, to BSE at an interest rate of 11.5%.  The $6,000,000 note included an additional "1x premium" that must be paid upon repayment.  As part of that transaction, CMB, BSE, and BSIF agreed to restructure the borrowers' several forms of debt, such that the Hogan Family Trust notes would have first priority, while the deferred interest and principal (now at 11.5% interest) would have second priority, and "the rest of the amounts due the [Group 7] partnership" (*i.e.*, all of the limited partners) would have fourth priority.  In this way too, CMB abused its role as general partner of Group 7, to enrich itself, at the expense of Plaintiffs and the other limited partners, while saddling the borrowers with enormous "interest" and

1   "premium" costs that further diminished the prospect that BSIF or BSE would ever

2   be able to repay the principal lent by Plaintiffs and the other limited partners.

3        81.    Yet another episode of self-dealing by CMB took place just months

4   later, in February 2018.  There, CMB advanced $4,500,000 as a "loan" to the Group

5   7 Partnership, nominally pursuant to California Corporations Code § 15904.06, at

6   an interest rate of 11.5%.  That $4,500,000 was then loaned by Group 7 to BSE at

7   an 11.5% interest rate, plus a "1x premium," whereby the necessary repayment by

8   BSE would be $9,000,000 in principal and the premium, plus the interest rate.  Here

9   too, even while the premium amount was nominally to be paid to the Group 7

10   partnership, as a result of the accrued amounts owing under the Annual Interest

11   Income Pass-Through, that entire amount would be paid to CMB, and not to

12   Plaintiffs or any of the other limited partners, to recoup the principal they had lent.

13        82.    CMB's reasons for the several renegotiations of the terms of Group 7's

14   financing of BSIF/BSE became clear with the December 2018 release to Plaintiffs

15   and the other limited partners of an "audit report" of Group 7's 2016 financial

16   statements, prepared by an accountancy called BKD, LLP.  For the first time, that

17   auditor's report noted that "[a]s of December 31, 2016, management believes it is

18   probable that the [$90 million] note payable will not be repaid[.]"  In other words,

19   beyond the fact that the 2014 and 2016 "modifications" starkly shifted the

20   proportion of payables from BSIF/BSE from principal payments to interest

21   payments, all of CMB's actions in 2017 and 2018 were taken while CMB fully

22   expected that Plaintiffs and the limited partners would not recover any portion of

23   their investment.  At least by December 2016, if not well before then, the interests

24   of Plaintiffs and the limited partners would have been better served by declaring

25   default on the original loan and undertaking efforts to recoup as much of their

26   capital as possible.  Instead, CMB chose to keep BSIF/BSE on life support, all the

27   while extracting as much as possible from those entities, for the sole benefit of

28   CMB and the Hogan Family Trust.

83.     The same audit report also disclosed that in conjunction with the added lending, BSE had assigned to Group 7 two promissory notes held by BSE in the Ivanpah venture with a face value of $56,452,619.  The audit report further disclosed that these notes were projected to yield approximately $80 million in cash flow over the next 20+ years.  In other words, CMB knew that while the Ivanpah project was not likely to return back any of the principal invested by the Group 7 limited partners, that project would likely yield sufficient cash worth CMB's time to prop up BSE in the short term.  And while touting to Plaintiffs and the other limited partners that obtaining the assignment of these promissory notes was to their financial benefit, the reality was that under the Annual Interest Income Pass-Through and the accrued amounts owed by the limited partners to CMB thereunder, virtually all of the cash flow from the promissory notes would flow solely to CMB.

84.     On October 31, 2021, CMB disclosed in an audit report that during 2020, it had received $5,986,167 in cash distributions stemming from the assigned BSE promissory notes.  Not a penny went to any of the limited partners, though they each received federal K-1 tax returns showing that they had earned $9,760 in "interest income" for that year.

85.     CMB has continually hid details about its activities, or only disclosed them years after they occurred, and based on the audit reports, CMB appears to be continuing to hide important details.  The 2019 audit report (which was not distributed to the limited partners until May 28, 2021) disclosed that the amount of deferred Annual Interest Income Pass-Through owed to CMB was $28,498,886.  Yet for the 2020 audit report (sent on October 31, 2021), the amount of the deferred Annual Interest Income Pass-Through was now $20,707,156.  No explanation was provided for the $7,791,730 reduction in this balance, and that amount obviously does not completely tie out to the $5,986,167 in cash distributions received that year under the BSE promissory notes.

86.     Similarly, the 2020 audit report bizarrely reported that the outstanding balance on Group 7's loan was $18,547,379.  Meanwhile, the 2019 audit report reported that the outstanding balance on that loan was $90 million.  Perhaps the $18,547,379 figure is a strange typo (that is repeated a second time in the audit report), or perhaps it reflects that more financial shenanigans are transpiring.

87.     A small group of limited partners made a demand to CMB to see Group 7's partnership list and books and records pursuant to the partnership agreement through their attorney.  Consistent with its plan to hide information, CMB refused to provide this required information.  CMB's attorney wrote back in response by inventing a non-existent business purpose requirement in order for the limited partners to receive this information, sought to impose non-existent confidentiality obligations tied to the receipt of these documents, and also claimed that the attorney needed to provide a "power of attorney" (which is a legal document empowering a non-lawyer agent to make legal authority to make certain decisions on behalf of a principal, not a document identifying a person as someone's lawyer).

88.     The Group 7 limited partnership agreement provides that if the general partner determines that the "reasonable needs of the Partnership require that a certain amount of additional capital be contributed to the Partnership," that CMB would "[a]dvise each of the Limited Partners of the need for Additional Required Capital," and that "[e]ach Limited Partner will have the option, but not the obligation, to invest additional equity capital in the Partnership."  Nevertheless, while professing that the extremely profitable bridge loans were for the benefit of Group 7, at no point did CMB advise Plaintiffs or any of the other limited partners of the opportunity to fund or otherwise participate in those investments.  Had CMB fulfilled its contractual and common law duty to advise Plaintiffs of such extremely profitable investment opportunities, Plaintiffs would have taken advantage of such opportunities, whether individually or acting together.  Instead, CMB made those

partnership opportunities available strictly to itself and to the Hogan Family Trust and/or other affiliated entities of CMB, thereby depriving Plaintiffs of the opportunity to recapture millions of dollars of their investment.

89.    By restructuring the payment stream from the Group 7 loan away from principal repayment and toward interest payments, CMB caused Plaintiffs and all other limited partners to face increased tax consequences from the additional "interest income" reported on their K-1 tax filings.  The adverse tax consequences from CMB's actions amounted to hundreds if not thousands of dollars of additional tax liability to each limited partner.

**Class Allegations**

90.    Plaintiffs bring this action on behalf of themselves and the "Group 7 Limited Partner Class," defined as follows:

> All current limited partners to the California Limited Partnership
> known as CMB Infrastructure Investment Group VII, L.P.

91.    This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

92.    There are at least 179 members of the proposed class, such that joinder of all members is impracticable.

93.    There are numerous questions of fact and law that are common to the class, including:  (1) whether CMB breached its fiduciary duty to the class members by engaging in self-dealing through (a) restructuring repayment of the Group 7 loan in such a way as to minimize repayment of the principal balance, while maximizing interest payments, and (b) making the series of extremely favorable bridge loans to BSE available only to the Hogan Family Trust or other affiliated entities of CMB, while withholding such partnership opportunities from the limited partner class members; (2) whether that same conduct breached the Group 7 limited partnership agreement and/or CMB's covenant of good faith and fair dealing owed to the class; (3) whether CMB was unjustly enriched by its actions in restructuring the Group 7

loan and making the series of bridge loans; (4) whether CMB is entitled to reimbursement for its purported loans pursuant to California Corporations Code § 15904.06; (5) whether CMB's restructuring of the payment stream on the Group 7 loan caused adverse tax consequences to the class; and (6) whether the class and/or the Group 7 partnership is entitled to recover damages and/or restitution from CMB.

94. Those same common questions of fact and law will predominate over any questions affecting only individual class members, including such class members' willingness and/or ability to have funded the series of bridge loans that CMB offered exclusively to the Hogan Family Trust and/or other of its affiliated entities.

95. Plaintiffs reserve the right to amend the definition of the proposed Group 7 Limited Partner Class as this case proceeds into discovery.  In particular, Plaintiffs reserve the right to move to certify the Group 7 Limited Partner Class under a different definition than the one set forth above, or to seek certification of only particular claims or issues under Rule 23(c)(4), should further information indicate that such amendment is necessary.

**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty – Duty of Loyalty)**

96. Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

97. Under California law, the general partner of a limited partnership owes a fiduciary duty to the partnership's limited partners.  That fiduciary duty includes a duty of undivided loyalty to the interests of the limited partners.

98. CMB breached its duty of loyalty to Plaintiffs and the other members of the Group 7 Limited Partner Class, by knowingly, and against the limited partners' interests, engaging in the several restructuring activities of the Group 7 loan as described herein, including by (1) restricting the payment stream from

BSIF/BSE so that it would yield interest payments rather than principal payments, (2) increasing the interest payment on the Group 7 loan from 5% to 11.5%, (3) arranging the series of highly favorable bridge loans between BSE and CMB and/or the Hogan Family Trust and other affiliated entities, while failing to make those investment opportunities available to Plaintiffs or other members of the class, and (4) failing to declare default on the Group 7 loan at a time when doing so would have been likely to yield some measure of recoupment of Plaintiffs' and the limited partners' capital contributions.  Beyond the fact that all of those actions were against the interests of Plaintiffs and the class, they were to the sole advantage of CMB, Patrick Hogan, the Hogan Family Trust, and other affiliated entities.

99.     Plaintiffs and all members of the Group 7 Limited Partner Class were harmed by CMB's breach of their duty of loyalty, through foregone principal payments, and through losing the opportunity to recover any portion of their principal investment, while CMB handsomely profited from the same actions. CMB's breach of their duty of loyalty in this regard was a substantial factor in causing that harm.  Plaintiffs and all members of the Group 7 class were further harmed by the adverse tax consequences of having the Group 7 loan repayments reclassified as interest payments rather than principal payments.

100.   Plaintiffs also seek their attorney's fees and costs as permitted under law, including the Tort of Another doctrine.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – Duty of Good Faith and Fair Dealing)

101.   Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

102.   Under California law, the general partner of a limited partnership owes a fiduciary duty to the partnership's limited partners.  That fiduciary duty includes the obligation for the general partner to discharge its duties to the partnership and

the other partners, and exercise any rights, consistently with the obligation of good faith and fair dealing.

103.   CMB breached its duty of good faith and fair dealing to Plaintiffs and the other members of the Group 7 Limited Partner Class, by knowingly, and against the limited partners' interests, engaging in the several restructuring activities of the Group 7 loan as described herein, including by (1) restricting the payment stream from BSIF/BSE so that it would yield interest payments rather than principal payments, (2) increasing the interest payment on the Group 7 loan from 5% to 11.5%, (3) arranging the series of highly favorable bridge loans between BSE and CMB and/or the Hogan Family Trust and other affiliated entities, while failing to make those investment opportunities available to Plaintiffs or other members of the class, and (4) failing to declare default on the Group 7 loan at a time when doing so would have been likely to yield some measure of recoupment of Plaintiffs' and the limited partners' capital contributions.  Beyond the fact that all of those actions were against the interests of Plaintiffs and the class, they were to the sole advantage of CMB, Patrick Hogan, the Hogan Family Trust, and other affiliated entities.

104.   Plaintiffs and all members of the Group 7 Limited Partner Class were harmed by CMB's breach of its duty of good faith and fair dealing, through foregone principal payments, and through losing the opportunity to recover any portion of their principal investment, while CMB handsomely profited from the same actions.  CMB's breach of their duty of good faith and fair dealing in this regard was a substantial factor in causing that harm. Plaintiffs and all members of the Group 7 class were further harmed by the adverse tax consequences of having the Group 7 loan repayments reclassified as interest payments rather than principal payments.

105.   Plaintiffs also seek their attorney's fees and costs as permitted under law, including the Tort of Another doctrine.

COMPLAINT
CASE NO. 2:22-CV-02025

### THIRD CLAIM FOR RELIEF
#### (Breach of Contract)

106.    Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

107.    CMB breached Section 4.01 of the Group 7 limited partnership agreement by failing to advise Plaintiffs or any other member of the class that the reasonable needs of the Group 7 partnership required additional capital inputs to protect the partnership's investment, and by failing to give Plaintiffs and the other members of the class the option to invest additional capital to meet those needs. Instead, CMB gave that option solely to itself, the Hogan Family Trust, and/or its other affiliated entities.

108.    Plaintiffs and all members of the class were injured by CMB's breach of the Group 7 limited partnership agreement because had CMB fulfilled its contractual obligations in this regard, Plaintiffs and the other class members would have taken advantage of the opportunity to make short-term bridge loans to BSE at an 11.5% interest rate with a 1x premium, and profited from such investments just as the Hogan Family Trust and/or CMB's other affiliated entities did.

109.    CMB also breached Section 12.01, 12.03, and 12.04 of the Group 7 limited partnership agreement by refusing to make available the list of all limited partners, and by refusing to allow Plaintiffs to conduct a private audit of Group 7's books or accounting.

110.    Plaintiffs seek preliminary and permanent injunctive relief allowing them to immediately access their inspection rights under Section 12 of the Group 7 limited partnership agreement.

111.    Plaintiffs also seek their attorney's fees and costs as permitted under law and by contract.

COMPLAINT
CASE NO. 2:22-CV-02025

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

112.   Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

113.   Implicit in all California contracts is a covenant that imposes a duty of good faith and fair dealing on the contracting parties.

114.   To the extent that any of CMB's actions were the result of the exercise of any discretionary powers it had under the Group 7 limited partnership agreement, CMB breached that covenant owed to Plaintiffs and all other members of the class by failing to advise them of the option to invest additional capital to meet the reasonable needs of the partnership in protecting its investment, and by all of the other conduct set forth herein.  Instead, CMB gave that option solely to itself, the Hogan Family Trust, and/or its other affiliated entities.

115.   Plaintiffs and all members of the class were injured by CMB's breach of the implied covenant, because Plaintiffs and the other class members would have taken advantage of the opportunity to make short-term bridge loans to BSE at an 11.5% interest rate with a 1x premium, and profited from such investments just as the Hogan Family Trust and/or CMB's other affiliated entities did.

116.   Plaintiffs also seek their attorney's fees and costs as permitted under law and by contract.

**FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

117.   Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

118.   Through its self-dealing actions alleged herein, CMB received financial benefits that properly belong to Plaintiffs and the other members of the class, and have retained those benefits at Plaintiffs' and the other class members' expense.  In particular, it is unjust for CMB to retain the benefits it obtained through the series of bridge loans, and through restructuring the payment stream

COMPLAINT
CASE NO. 2:22-CV-02025

from the Group 7 loan to generate interest income rather than repayment of principal.

## SIXTH CLAIM FOR RELIEF
### (Equitable Relief – Removal of General Partner)

119.   Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

120.   The Group 7 limited partnership agreement provides that the general partner may be removed based on a judicial determination that it (a) materially breached the agreement, or (b) engaged in gross negligence or willful or wanton misconduct.

121.   Under California Corporations Code § 15906.03, a general partner may be expelled by court order because it (i) engaged in wrongful conduct that adversely and materially affected the limited partnership activities, (ii) it willfully or persistently committed a material breach of the partnership agreement or of a duty owed to the partnership or the other partners under California Corporations Code § 15904.08, or (iii) it engaged in conduct relating to the limited partnership's activities which makes it not reasonably practicable to carry on the activities of the limited partnership with itself as a general partner.

122.   As alleged herein, CMB made a series of decisions and engaged in a series of transactions contrary to the interests of Plaintiffs and all of the other limited partners, and for its own enrichment at their expense.  CMB also willfully committed a material breach of the Group 7 limited partnership agreement in multiple ways.  Such conduct justifies a judicial determination that CMB should be removed as the general partner for Group 7.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Relief – California Corporations Code § 15904.06)

123.   Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

124.   CMB has announced that all loans made by its affiliated lenders (including Hogan Family Trust) to BSE have been assigned to CMB as additional capital under California Corporations Code § 15904.06 and will be treated as a loan made by CMB subject to repayment, plus interest.

125.   CMB has also announced that any loans it has made to BSE have been treated as an advance of capital under California Corporations Code § 15904.06 and will be treated as a loan made by CMB subject to repayment, plus interest.

126.   The total amount of loans purportedly made by CMB and its affiliated lenders to BSE is in excess of $14 million, and each of them purportedly accrue interest at an annual rate of 11.5%.

127.   Plaintiffs and the other limited partners never authorized these self-dealing transactions.  Nor were these transactions made pursuant to the procedures set forth in the Group 7 limited partnership agreement regarding the contribution of additional capital.  Plaintiffs accordingly request a judicial declaration that these transactions do not give right to an obligation by them or the other limited partners for repayment, or payment of any accrued interest, under the meaning of California Corporations Code § 15904.06.

## **PRAYER**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.      For judgment against Defendant CMB Export LLC;

2.      For damages;

3.      Restitution of the amounts by which CMB Export LLC was unjustly enriched;

4.      Preliminary and permanent injunctive relief;

5.      Expulsion of CMB Export LLC as the general partner of CMB Infrastructure Investment Group VII, L.P;

6.      For declaratory relief;

7.      For attorney's fees;

8.      For costs; and

9.      For such other and further relief as the Court deems just and proper.


Dated:  March 28, 2022                    GAW | POE LLP


By: _____
                                          Randolph Gaw
                                          Attorneys for Plaintiffs

COMPLAINT
CASE NO. 2:22-CV-02025

1    Plaintiffs Hui Cai, Jie Cao, Liming Chen, Lingping Chen, Xiaobing Chen,

2  Yuhong Duan, Lin Fan, Shaojiang Gai, Xubin Gao, Yunfei Gao, Junhang Guan, Ye

3  Guo, Bei Jiang, Zuqiang Jin, Kai Lan, Faming Li, Fang Li, Ling Li, Lingao Li,

4  Ruping Li, Na Li, Zilong Li, Yanmin Liao, Gang Liu, Haipeng Liu, Pengjian Liu,

5  Qian Liu, Xiaohu Luo, Lei Ma, Yuanqing Miao, Jiexin Niu, Hemangkumar Patel,

6  Bingchen Shangguan, Huanxin She, Yi Shen, Yuping Shen, Tao Shen, Donggang

7  Wang, Shuyu Wang, Yu Wang, Hong Wu, Xue Dong Wu, Hongxiong Xu, Yun

8  Xue, Meixia Yang, Wen Yang, Ling Ye, Wei Ye, Lili Zhang, Shaohui Zhang,

9  Xinyang Zhang, Li Mei Zhao, Qi Zhou, Qixuan Zhou, Wen Zhou, Bin Zhu, Biying

10  Zhu hereby demand a jury trial of their claims against Defendant CMB Export

11  LLC.

12

13    Dated:  March 28, 2022              GAW | POE LLP

14

15                                     By:

16                                        Randolph Gaw
                                         Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. 2:22-CV-02025