UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-02025-MWF (JPRx) | **Date:** October 4, 2022 |
| **Title:** Hui Cai et al v. CMB Export LLC | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Plaintiff:
None Present

Attorneys Present for Defendant:
None Present

**Proceedings (In Chambers):** ORDER GRANTING IN PART, DENYING IN PART, DEFENDANT'S MOTION TO DISMISS [34]

Before the Court is Defendant CMB Export LLC's ("CMB" or "Defendant") Motion to Dismiss the First Amended Complaint (the "Motion"), filed on July 20, 2022. (Docket No. 34). Plaintiffs Hui Cai et. al. filed an Opposition on August 29, 2022. (Docket No. 35). Defendant filed a Reply on September 19, 2022. (Docket No. 28).

The Court has read and considered the papers filed in connection with the Motion and held a hearing on **October 3, 2022**.

The Motion is **DENIED** *in part* and **GRANTED** *in part* as follows:

- The Motion is **GRANTED** *without leave to amend* as to the unjust enrichment claim (governed by a three-year statute of limitations) to the extent it is based on the Hogan Family Trust Bridge Loans because Plaintiffs were made aware of the terms of those loans on December 11, 2017. Therefore, the claim was untimely even assuming Emergency Rule 9 tolled the claim by 178 days.

- The Motion is **DENIED** as to the unjust enrichment claim to the extent it is based on the loan modifications because Plaintiffs were not on inquiry notice until they received the audit report on December 6, 2018. Emergency Rule 9 tolled the claim for 178 days such that the deadline to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-02025-MWF (JPRx)**                    **Date:  October 4, 2022**
**Title:       Hui Cai et al v. CMB Export LLC**

bring the claim was June 8, 2022 — over two months *after* the Complaint was filed.

- As for all other claims, each of which is governed by a four-year statute of limitations, the Motion is **DENIED** because the earliest any claim began to accrue was December 11, 2017, and Emergency Rule 9 tolled each claim by 178 days.  Therefore, Plaintiffs filed this action prior to the deadline of June 13, 2022.

I.   **BACKGROUND**

   A.   **Group 7 Partnership and Loan**

Plaintiff Cai seeks to represent a class of foreign nationals (collectively, "Plaintiffs") in an action arising from an allegedly mismanaged investment partnership. Plaintiffs were all investors in the federal government's EB-5 visa program, whereby a foreign national may obtain a green card by investing $500,000 to finance business ventures that creates employment in the United States.  (First Amended Complaint ("FAC") ¶¶ 3-4 (Docket No. 26)).  Plaintiffs participated in that program as limited partners in a California limited partnership called CBM Infrastructure Investment Group VII, L.P. ("Group 7").  (*Id.* ¶ 4).  Group 7 was created by its general partner, CMB, a single-member LLC owned and managed by a man named Patrick Hogan.  (*Id.*).

In accordance with the EB-5 visa program, Plaintiffs each joined Group 7 by individually purchasing one unit of the partnership in exchange for a capital contribution of $500,000.  (*Id.* ¶¶ 4, 73).  Defendant and each of the Plaintiffs entered into a partnership agreement (the "Agreement"). (*Id.* ¶ 75 & Ex. 1).  Under Section 4.01(2) of the Agreement, Defendant received priority on any interest payments that Group 7 would receive through a device called the Annual Interest Income Pass-Through.  (*Id.* ¶ 76.).  Under that provision, regardless of the percentage of interest charged, Defendant would annually receive all but one percentage point of the annual interest received on loans made by Group 7.  (*Id.* ¶ 77).  In addition to their $500,000

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 22-02025-MWF (JPRx)** | **Date:  October 4, 2022** |
| **Title:     Hui Cai et al v. CMB Export LLC** | |

capital contribution, each Plaintiff also paid Defendant a non-refundable syndication fee between $35,000 to $45,000, thereby earning CMB fees of $6.3 million at the inception of the program.  (*Id.* ¶ 73).  CMB also contractually gave itself the "full, exclusive, and complete discretion, power and authority, to manage, control, administer, and operate the business and affairs of the [p]artnership[.]"  (*Id.* ¶ 79).

In November 2011, Defendant, as general partner, caused Group 7 to make a $90 million loan investment to fund the Ivanpah solar generating facility (the "Group 7 Loan" or "Loan").  (*Id.* ¶ 5).  This Loan was secured by a promissory note issued by the borrower, Brightsource Ivanpah Funding LLC, and was also guaranteed by Brightsource Energy, Inc. (collectively, "BSIF").  (*Id.* ¶¶ 6, 80).  The note called for 5% quarterly interest payments and annual principal payments of $5 million beginning December 31, 2014.  (*Id.* ¶ 80).

### B.      Group 7 Loan Modifications

On September 14, 2014, Defendant and BSIF entered into a loan modification of the Group 7 Loan.  (*Id.* ¶ 81).  The second through fourth quarterly interest payments for that year, along with the upcoming principal payment, would be deferred to January 15, 2015, in exchange for a $400,000 loan modification fee plus late charges.  (*Id.*).  BSIF eventually made all of the quarterly interest payments for 2014, and also paid the $400,000 loan modification fee, but missed making the annual principal payment.  (*Id.*).  BSIF did not make any loan payments in 2015.  (*Id.* ¶ 83).

On April 13, 2016, Defendant and BSIF entered into a second loan modification of the Group 7 Loan.  (*Id.* ¶ 83).  As part of that modification, all prior missed payments would be deferred until March 1, 2018, but in return, BSIF would make three interest-only payments of $2.2 million each year from 2016-2018.  (*Id.* ¶ 83).  Another term of the 2016 loan modification was that BSIF agreed to increase the interest rate from 5% to 11%.  (*Id.* ¶ 84).  Due to the Annual Interest Income Pass-Through provision in the Agreement, as well as the accrued interest payments already owed to Defendant, the entire amount of each "interest-only" payment would be retained solely by Defendant.  (*Id.* ¶¶ 84, 89).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-02025-MWF (JPRx)          Date:  October 4, 2022
Title:      Hui Cai et al v. CMB Export LLC

       **C.**     **Hogan Family Trust Bridge Loans**

Sometime in September 2017, the Hogan Family Trust (an entity under the control of Patrick Hogan, the single member-manager of Defendant CMB), entered two Bridge Loans with BSIF (the "Bridge Loans"). (*Id.* ¶¶ 8, 86). The Hogan Family Trust lent BSIF $7.5 million in exchange for an 11.5% interest rate plus a "1x premium" equal to $6 million. (*Id.*). As part of that transaction, CMB and BSIF agreed to restructure the existing debt between them so that the Bridge Loans would have first priority, while the deferred interest and principal (i.e., the April 13, 2016, loan modification) would have second priority, and "the rest of the amount due the Group 7 partnership would have fourth priority. (*Id.* ¶ 86).

The Court notes that the FAC also vaguely references a loan made by CMB to the partnership in February 2018, which CMB then caused the partnership to loan to BSIF, under terms that would also inure to CMB's benefit. (*Id.* ¶ 87). But neither the Motion nor the Opposition substantively address this fact or explain how it affects the statute of limitations. Therefore, the Court has not considered it in the analysis.

       **D.**     **Defendant's Representations and Disclosures to Plaintiffs**

The FAC alleges that at various times Plaintiffs called Defendant with questions about why BSIF missed its principal payments. Plaintiffs contend that CMB executives and employees would orally reassure them that BSIF's financial problems were transitory. (*Id.* ¶ 93). They would also assure Plaintiffs that the loan modifications and additional loans made by a CMB affiliate would have the effect of maximizing BSIF's ability to repay the principal owed on the Group 7 Loan. (*Id.* ¶¶ 91, 93).

The FAC alleges that it was not until December 11, 2017, that Defendant disclosed to Plaintiffs that the Hogan Family Trust had made the Bridge Loans, along with the terms of those loans. (*Id.* ¶ 91). These were all non-public transactions and Plaintiffs had no way of obtaining any information about them on their own. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-02025-MWF (JPRx) | **Date:** October 4, 2022 |
| **Title:** Hui Cai et al v. CMB Export LLC | |

Then, on December 6, 2018, Defendant disseminated to Plaintiffs a Group 7 audit report for the 2016 fiscal year. (*Id.* ¶ 88). In that report, Defendant disclosed for the first time that as of December 31, 2016, its management "believe[d] it is probable that the [$90 million Group 7 Loan] w[ould] not be repaid[.]" (*Id.*). Plaintiffs allege that was the first time the impact of the loan modifications became clear; the modifications would enrich Defendant while simultaneously reducing the likelihood that BSIF would ever be able to repay the principal on the Group 7 Loan. (*Id.* ¶¶ 88, 96, 111).

Based on the foregoing, Plaintiffs filed this class action lawsuit on March 28, 2022. (Docket No. 1). Plaintiffs allege seven claims; (1) –(2) breach of fiduciary duties (loyalty and good faith and fair dealing); (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) unjust enrichment; (6) removal of Defendant as general partner; and (7) declaratory relief. Defendant brought this Motion under Rule 12(b)(6) for failure to state a claim, arguing that the Complaint was filed outside of the relevant statutes of limitations.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-02025-MWF (JPRx)**                          **Date:  October 4, 2022**
**Title:        Hui Cai et al v. CMB Export LLC**

plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679).  The Court need not accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678.

### III.  **DISCUSSION**

#### A.  **Governing Statutes of Limitations and Relevant Dates**

The FAC primarily alleges two theories of wrongful or self-dealing conduct by Defendant: (1) that the failure to provide Plaintiffs the opportunity to advance the Bridge Loans allegedly made in September 2017 deprived Plaintiffs of the chance to receive profitable interest payments and (2) that the modifications to the Group 7 Loan, which were made on September 14, 2014, and on April 13, 2016, ensured that Defendant would be paid interest, while simultaneously reducing the likelihood that Plaintiffs would ever receive principal repayments on the Group 7 loan.

The parties appear to agree that all of Plaintiffs claims are governed by a four-year statute of limitations ("SOL") except the unjust enrichment claim, which is governed by a three-year SOL.  (*See* Motion at 11, 13, 14).

Plaintiffs argue that their claims for monetary relief are timely because none of the claims began to accrue until 2021 after BSIF made its first loan repayment to Defendant, which resulted in negative tax consequences that only became evident when Plaintiffs received their K-1 federal tax returns.  (Opposition at 9-11).  Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-02025-MWF (JPRx)**                          **Date:  October 4, 2022**
**Title:       Hui Cai et al v. CMB Export LLC**

contend that this was the first time any of the Plaintiffs suffered any loss or harm.  (*Id*).  To support this position, Plaintiffs cite to cases that hold "where monetary damages are an element of the offense, accrual of the action does not occur until pecuniary loss is suffered."  (*Id.*) (citing *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (surveying the case law)).

Defendant counters that any "[d]amages suffered as a consequence of tax filings may be an aspect of Plaintiffs' damage claim, but it is not the exclusive or first time the Complaint alleges damage."  (Motion at 16).

The Court agrees with Defendant.  Here, the problem for Plaintiffs is that, given the nature of their claims, the harm they alleged to have suffered is the ***non-receipt*** of payment, which, of course, is a form of monetary damages and occurred long before the 2021 tax returns.  Plaintiffs argue that Defendant's actions deprived them of potential profits from the Bridge Loans and of principal repayments; the tax consequences that were realized in 2021 were merely a component, not the essence, of their claims of damages.  *See Walker v. Pac. Indem. Co.*, 183 Cal. App. 2d 513, 517, 6 Cal. Rptr. 924, 926 (1960) ("[I]t is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action."); *see also* (FAC ¶ 117) ("Plaintiffs and all members of the Group 7 Limited Partner Class ***were harmed*** by CMB's breach of its duty of good faith and fair dealing, ***through foregone principal payments, and through losing the opportunity to recover any portion of their principal investment, while CMB handsomely profited from the same actions***.") (emphasis added)).  Indeed, the Court is confident that Plaintiffs would not feel they were made whole if the only relief they obtained from this action was a refund of their 2021 taxes.

Plaintiffs themselves admit that the fact of damages became certain in 2016, when Defendant wrote off the entire value of the Group 7 Loan, because that is when it became clear that deferring principal repayments in exchange for high interest-only payments enriched Defendant while "simultaneously reducing the likelihood that BSIF [] [] would ever be able to pay a dime against the principal."  (FAC ¶¶ 84, 88).  Further, the harm that resulted from the Bridge Loans was clearly the lost opportunities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-02025-MWF (JPRx)**                    **Date:  October 4, 2022**
**Title:     Hui Cai et al v. CMB Export LLC**

to partake in profitable investments that yielded high interest rates.  (*Id.* ¶100).  Those opportunities were lost in 2017 when the loans were made, and therefore, the element of damages was sufficiently certain years before the 2021 tax returns.

And this situation is quite unlike those in the cases cited by Plaintiffs, which primarily involved defendant insurance brokers failing to secure insurance for the plaintiffs in breach of their contracts.  In such cases, courts have held that the damages element of those plaintiffs' breach of contract claims did not occur until the injury giving rise to the need for insurance.  *See e.g., Walker*, 183 Cal. App. 2d at 516.  Given the very nature of insurance, unless and until an accident occurred, the plaintiffs were not harmed by their lack of insurance.  Here, regardless of whether Plaintiffs suffered tax consequences from Defendant's actions, they suffered harm when Defendant or the Hogan Family Trust received lucrative interest payments that allegedly could or should have been paid to Plaintiffs as principal repayments.

Therefore, the Court rejects Plaintiffs' argument that their claims only began to accrue in 2021.  The Court thus proceeds to assess whether Plaintiffs may rely on the delayed discovery rule to establish that their claims were timely filed.

### B.     Delayed Discovery Rule

"An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807.  The "discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.*  Once "the plaintiff suspects or should suspect that her injury was caused by wrongdoing," Plaintiffs are "required to conduct a reasonable investigation" and are "charged with knowledge of the information that would have been revealed by such an investigation." *Id.* at 808; *Nelson v. Indevus Pharms.,* Inc., 142 Cal. App. 4th 1202, 1206, 48 Cal. Rptr. 3d 668, 671 (2006).

"[A] plaintiff's duty to investigate does not begin until the plaintiff actually has a reason to investigate." *Nelson*, 142 Cal. App. 4th at 1206.  But "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 22-02025-MWF (JPRx)** | **Date:  October 4, 2022** |
| **Title:     Hui Cai et al v. CMB Export LLC** | |

the facts to find her." *Jolly*, 44 Cal. 3d at 1111.  The delayed discovery doctrine "uses an objective test" that looks not to what the particular plaintiff actually knew but what a reasonable plaintiff would have suspected. and thereafter, what a reasonable inquiry would have revealed. *See Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 648, 134 Cal. Rptr. 2d 273 (1992).

### 1. Claims Stemming from the Bridge Loans

In its Motion, Defendant argues that the claims arising from the Bridge Loans expired in December 2021.  (Motion at 2).  This date is based on the fact that Plaintiffs allege in the FAC that they became aware of the terms of the Bridge Loans in December 2017.  (*Id.*).

In its Opposition, Plaintiffs point out that the SOL for all state law claims was tolled for 178 days as a result of the COVID-19 pandemic.  (Opposition at 8) (citing *Hector Tapia v. Hyatt Corp.*, No. CV 20-02346-DOC (JDEx), 2021 WL 3076650, at *5 (C.D. Cal. June 30, 2021) ("Emergency Rule 9, [ ] tolled statutes of limitations exceeding 180 days from April 6, 2020, until October 1, 2020, an extension of 178 days."); *see also* Cal. Judicial Council Emergency Rule 9).  Therefore, because Plaintiffs filed this lawsuit on March 28, 2022, they argue that the claims governed by a four-year SOL are timely if they accrued on or after October 1, 2017 (i.e., 4 years and 178 days prior).  They contend that means all such claims are in fact timely because "the earliest possible accrual for any of Plaintiffs' claims is December 11, 2017." (Opposition at 8).

As noted, Defendant's position in its Motion was that all claims based on the Bridge Loans began to accrue in December 2017, when Plaintiffs admit they became aware of those loans.  (Motion at 2).  However, Defendant did not discuss or account for the Emergency Rule 9 extension in its initial papers.  In its Reply, Defendant does not argue that Emergency Rule 9 does not apply but instead does an about face and argues that "the underlying loan transaction was modified first in 2014 and again in 2016" and because those modifications form the basis of all claims, the claims are barred regardless of the 178-day extension.  (Reply at 11).

| | | |
|---|---|---|
| | **CIVIL MINUTES—GENERAL** | **9** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 22-02025-MWF (JPRx) | Date: October 4, 2022 |
|---|---|---|
| Title: | Hui Cai et al v. CMB Export LLC | |

At the hearing Defendant's counsel argued that the SOL was tolled prior to December 11, 2017, because Plaintiffs admit they were aware of the Bridge Loans prior to that date. As an initial matter, the Court declines to give much weight to this argument given it was not the argument Defendant made in its moving papers. Moreover, regardless of whether Plaintiffs were generally aware that the Bride Loans were made, the FAC alleges that it "was not until December 11, 2017," that Defendant disclosed the "terms" of the Bridge Loans and the fact "that the Hogan Family Trust (i.e., a family trust owned and operated by the owner of CMB) had been making the loans." (FAC ¶ 91). Plaintiffs further allege that "these were all non-public transactions and there was no way for Plaintiffs to have obtained such information absent a voluntary disclosure from CMB or Plaintiffs getting access to CMB's records." (*Id.*).

Given the alleged facts and Defendant's own position in its Motion, it is clear that, to the extent the claims are based off of the Bridge Loans, those claims did not begin to accrue until Plaintiffs were aware of their existence and terms on December 11, 2017. So, the real question is whether Emergency Rule 9 applies because without it, Plaintiffs' claims premised on the Bridge Loans expired on December 11, 2021. But applying Emergency Rule 9, the claims did not expire until June 13, 2022.

Other federal district courts have applied Emergency Rule 9 to toll California state law claims. *Gianelli v. Schoenfeld*, No. 221CV00477JAMKJNPS, 2021 WL 4690724, at *18–19 (E.D. Cal. Oct. 7, 2021), *report and recommendation adopted,* No. 21-0477-JAM-KJN-PS, 2021 WL 5154163 (E.D. Cal. Nov. 5, 2021) (citing *Palacios v. Interstate Hotels & Resorts Inc.*, No. 21-CV-05799-TSH, 2021 WL 4061730, at *3-4 (N.D. Cal. Sept. 7, 2021); *see also Tapia v. Hyatt Corp.*, 2021 WL 3076650, at *5 (C.D. Cal. June 30, 2021). Emergency Rule 9 has the practical effect of adding 178 days to unexpired statutes of limitations. *See Palacios*, 2021 WL 4061730 at *3 ("[T]he practical effect of Emergency Rule 9 is to extend the time for the [plaintiff] to file such claims [by 178 days] from February 1 to July 29."); *Tapia*, 2021 WL 3076650, at *5 (describing Emergency Rule 9 as providing "an extension of 178 days"). Given Defendant did not object to its application, and consistent with other courts, the Court will apply Emergency Rule 9 to extend the SOL at issue by 178 days.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-02025-MWF (JPRx)                              Date:  October 4, 2022
Title:     Hui Cai et al v. CMB Export LLC

Accordingly, the Motion is **DENIED** to the extent it is based on claims concerning the Bridge Loans with a four-year SOL.

However, as to the unjust enrichment claim, the only claim governed by a three-year SOL, the Motion is **GRANTED** to the extent it is based on the Bridge Loans that Plaintiff became aware of in December 2017 because that claim is untimely even after applying Emergency Rule 9 to toll that claim by 178 days.

### 2.  Claims Stemming from the Loan Modifications

Plaintiffs argue that if their claims pertaining to the loan modifications did not begin to accrue in 2021, then the earliest those claims could have begun to accrue was December 6, 2018, when Defendant disclosed for the first time that its management had decided (in 2016) to write off the entire value of the $90 million Group 7 Loan as uncollectible.  (Opposition at 18).  Plaintiffs contend that "[t]his is when Plaintiffs first had any reason to suspect that CMB (who, again, Plaintiffs trusted because it owed them a fiduciary duty) had engaged in wrongdoing."  (*Id.*).

Although somewhat unclear, Defendant seems to argue that Plaintiffs' claims regarding the loan modifications accrued "on or about December 31, 2014, when the loans giving rise to this lawsuit were supposed to have been repaid but were not." (Reply at 2; *but see* Motion at 2) ("[T]he claims in this action therefore expired in or around ***December 2019*** after Plaintiffs' learned of the loan modification.").  Given the arguments advanced in the Reply, the Court assumes Defendant's counsel miscalculated when it argued in its Motion that Plaintiffs' claims regarding the loan modifications expired in December 2019, which would be five (rather than four) years after Plaintiffs became aware of the first modification.

The Court agrees with Plaintiffs that under the discovery rule, the claims based on the loan modifications did not begin to accrue until Plaintiffs had reason to suspect wrongdoing by Defendant, which was not until December 6, 2018.  The critical question at issue is when Plaintiffs were put on inquiry notice thereby triggering their duty to investigate the claims.  Plaintiffs claim that their suspicions were sufficiently aroused to trigger the duty to investigate only when they learned in 2018 that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-02025-MWF (JPRx) | **Date:** October 4, 2022 |
| **Title:** Hui Cai et al v. CMB Export LLC | |

Defendant had wrote off the underlying value of the Group 7 Loan because only then did "Plaintiffs understand that the impact of the loan remodification terms—calling for deferrals of principal repayments in exchange for interest-only payments and boosting the interest rate—would have no benefit to Plaintiffs whatsoever, as these terms would not, in fact, increase the odds that BSIF would be able to repay some of the $90 million promissory note." (Opposition at 18). Defendant counters that Plaintiffs should have been suspicious the minute that BSIF missed their loan repayment in 2014 because Plaintiffs knew, based on the partnership agreement that they stood to gain much more from principal payments than they did from interest payments. (*See* Motion at 5-6, 11).

However, as Plaintiffs persuasively assert, knowledge that **BSIF** missed principal payments does not suggest there had been any "wrongdoing" **by CMB** that did or could injure Plaintiffs. (Opposition at 15). As Plaintiffs argue there is nothing inherently nefarious about a loan modification, particularly in light of the fact that Plaintiffs allege that whenever Plaintiffs would ask Defendant about missed principal payments, Defendant's would assure Plaintiffs that the loan modifications would have the effect of maximizing BSIF's ability to repay the $90 million principal that BSIF owed to Group 7. (*Id.* ¶¶ 91, 93).

In response, Defendant cites to several out-of-circuit cases to contend that "federal courts do not allow plaintiffs to excuse their failure to perform due diligence because they 'relied' on statements made by the defendants." (Motion at 12). Even if that proposition were generally true, it does not apply here. As Plaintiffs point out, under California law, "when a potential plaintiff is in a fiduciary relationship with another individual, the plaintiff's burden of discovery is reduced, and they are entitled to rely on the statements and advice provided by the fiduciary." *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 324, 267 Cal. Rptr. 5 (1990) (citing *Sherman v. Lloyd*,181 Cal.App.3d 693, 698, 226 Cal. Rptr. 495 (1986)). Here, there is no dispute that as the general partner tasked with managing the partnerships' assets, Defendant had a fiduciary duty to Plaintiffs. And Plaintiffs allege that they believed Defendant's assurances that the loan modifications increased the likelihood that BSIF would be able to eventually pay the principal. Therefore, Plaintiffs were "entitled to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-02025-MWF (JPRx) | **Date:** October 4, 2022 |
| **Title:** Hui Cai et al v. CMB Export LLC | |

rely upon the assumption that [their] fiduciary [was] acting on [their] behalf." *Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal. App. 3d 174, 202, 210 Cal. Rptr. 387 (1985) (citation omitted).

In its Reply and at the hearing, Defendant's counsel relied on *Miller v. Bechtel Corp.* 33 Cal. 3d 868, 874-875, 191 Cal. Rptr. 619 (1983) to argue that Plaintiffs were not entitled to rely on Defendant's assurances because Plaintiffs were put on notice of Defendant's breach of duty. However, *Miller* is inapposite. There, the California Supreme Court affirmed the trial court's entry of **summary judgment** where the evidence "established **without question** that attorneys who represented [the] plaintiff . . . entertained serious doubts whether the value attributed to the stock in the property settlement agreement accurately reflected its true value." *Id.* at 875 (emphasis added). Here, while Plaintiffs certainly expressed curiosity regarding the missed principal payments, there are no facts to suggest that Plaintiffs suspected or should have suspected anything nefarious about Defendant's reasoning for the loan modifications. Contrarily, Plaintiffs allege that Defendant's real reasons for the modifications "were first revealed in [Defendant's] December 2018 release to Plaintiffs and the other limited partners of an 'audit report' of Group 7's 2016 financial statements." (FAC ¶ 88).

In the other case cited by Defendant, *WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157, 192 Cal. Rptr. 3d 423, 430 (2015), the court held that the plaintiffs could not rely on the statements of their fiduciaries (i.e., accountants) to toll the SOL, because the fiduciaries' statements were plainly contradicted by written memorandum that were given to the plaintiffs well outside the SOL. Here, Plaintiffs did not receive any written memorandum explaining the circumstances of the loan modifications until December 6, 2018. The Court agrees that once the Plaintiffs received the audit report, Plaintiffs were no longer entitled to rely on oral assurances by Defendant to toll the SOL, but prior to receiving the audit report, Plaintiffs were entitled to rely on Defendant's statements. If the Court were to hold otherwise, it would eviscerate the special treatment afforded by California courts to Plaintiffs whose claims are obscured by disloyal fiduciaries. So, unlike *WA*, the Court cannot say as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-02025-MWF (JPRx)                    Date:  October 4, 2022
Title:    Hui Cai et al v. CMB Export LLC

matter of law that Plaintiffs were aware or should have been aware of Defendant's breach as soon as the first loan modification was made in 2014.

Therefore, to the extent Plaintiffs' claims are based on the loan modifications, such claims did not accrue until December 6, 2018.  As such, all of Plaintiffs' claims based on the loan modifications are timely.  This is true even for the unjust enrichment claim, governed by a three-year SOL, since Emergency Rule 9 tolled the claim for 178 days such that the deadline to bring the claim was June 8, 2022.

Accordingly, the Motion is **DENIED** to the extent is based on the statute of limitations for claims regarding the loan modifications.

## C.  Shotgun Pleading

Defendant also makes a half-hearted argument that all claims should be dismissed because the FAC engages in shotgun pleading by realleging all the proceeding paragraphs under each claim for relief.  (Motion at 16-17).  However, Defendant acknowledges that shotgun pleadings are those which "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations."  (*Id.* at 16) (citing *Morris v. Sun Pharma Glob. Inc.*, No. CV 21-0441-PAJ (PRx), 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021) (internal citation omitted)).  As Plaintiffs argue, Defendant's Motion "demonstrates that it fully comprehends Plaintiffs' claims for relief and the facts they are relying upon to state those claims."  (Opposition at 25).  The Court does not view the FAC as an incomprehensible mass of allegations.

While it is technically improper to incorporate by reference, irrespective of relevance, every preceding allegation under each claim for relief, Defendant's recourse for such a pleading is to move for a more definite statement under Rule 12(e), not a motion to dismiss under Rule 12(b).  *Destfino v. Kennedy*, No. CV-F081269-LJO-DLB, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011).  Here, the Court doubts that Defendant actually desires a more definite statement (as opposed to dismissal), and even if it did, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-02025-MWF (JPRx) | **Date:** October 4, 2022 |
| **Title:** Hui Cai et al v. CMB Export LLC | |

would not grant such a request. *See id.* at *3 ("Motions for more definite statement are viewed with disfavor, and are rarely granted.").

Accordingly, the Motion is **DENIED** to the extent it is based on shotgun pleading.

## IV.   CONCLUSION

The Motion is **DENIED** as to all claims with a four-year SOL and as to the unjust enrichment claim (governed by a three-year SOL) to the extent that claim is based on the loan modifications. The Motion is also **DENIED** to the extent is based on shotgun pleading.

However, the Motion is **GRANTED** *without leave to amend* as to the unjust enrichment claim to the extent it based on the Bridge Loans. Because Plaintiffs unequivocally allege that they became aware of the terms of the Bridge Loans in December 2017, and the SOL for unjust enrichment is three years, leave to amend would be futile. *See B-K Lighting, Inc. v. Fresno Valves & Casting*, No. CV 06-02825-MMM (PLAx), 2008 WL 11338299, at *3 (C.D. Cal. Jan. 7, 2008) ("[C]ourts have held that a proposed amendment to a claim or counterclaim is futile where the claim would be barred by the applicable statute of limitations."); *see also Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n. 20 (9th Cir. 2003) (denying leave to amend in part because the 10-year statute of limitations on the claim had run and thus, "permitting Deutsch to amend his complaint would be futile"). Moreover, at the hearing, Plaintiffs' counsel acknowledged that this aspect of the FAC was time-barred.

Defendant shall file an Answer to the FAC by no later than **October 18, 2022**.

IT IS SO ORDERED.